IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CT-03134-M

| | | |
|---|---|---|
| ROBERT L. BYRD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SERGEANT McLEOD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On April 18, 2022, Robert L. Byrd ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees, filed a complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 7].

The court now conducts its initial review under 28 U.S.C. § 1915A and, for the reasons discussed below, dismisses the complaint.

Legal Standard:

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a), (b)(1). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). A *pro se* plaintiff's pleading, however, must contain "more than labels and conclusions," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008), and the court need not accept as true any legal conclusions or unwarranted factual inferences, see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Further, a plaintiff also "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

### Plaintiff's Complaint:

Plaintiff alleges Sergeant McLeod, Sergeant Smith, and Unit Management Team members Crystal N. Tant, Curtis Ward, Jr., and Jennifer Webb, violated his First, Fourth, Eighth, and Fourteenth Amendment rights at Nash C.I. beginning on June 19, 2020. Compl. [D.E. 1] at 3–6.

Plaintiff specifically alleges, *inter alia*: Smith was "deliberately indifferent" to his property when "packing for medical," resulting in the loss of a photograph of his father and destruction of his artwork, which he characterizes as "protected first amendment expression [sic]"; Ward impeded the administrative remedy process, using a "position of authority to utilize coercion and duress with false promises to truncate [plaintiff's grievance number] 13188 handling off record [sic]," "frustrating and impeding admin procedure to chill and covertly retaliate [against plaintiff's]

2

speech to recover property loss [sic]"; McLeod, while plaintiff was at work and not present, later conducted search that was "covertly relation [sic]"; similar to Smith's search, McLeod's search caused the loss of a "photograph of murdered son and destroy[ed] property and art portfolio in attempt to chill mentally challenged prisoner with undue influence [sic]"; Tant and Webb "allowed 6 page grievance" that "resurrect[ed] 13188"; "staff turned a blind eye negating acting timely to restore photos ignoring retribution and undue influence with retaliatory threats allowing property loss tort to manifest into civil rights violation [sic]"; and "recrimination for staff sloth against [defendant] Smith displeasure of facility rule, to pack property for inmate gone to outside medical care, covertly retaliated by destroying property [sic]." Id. at 6–7.

He asserts, as his injury: two photographs were destroyed, leading to "senseless harassment meant to deprive plaintiff of a liberty interest, placing mental health patient in a series of coverups while staff utilize coercion and duress, creating a ridiculous property deprivation into a civil rights violation [sic]"; "malicious injury with anxiety and annoyance sleep deprivation [sic]"; "McLeod's actions were meant to deprive plaintiff of his photograph in an effort to protect Smith and covertly retaliate . . . amounting to cruel and unusual tactics requesting her designees continue acts of retaliation after she is gone [sic]"; "all named staff relied upon collegiality to cover up"; "an overexaggerated campaign of harassment to terrify plaintiff by mentally overbearing his will with threats of job program loss, shipping diesel therapy, further loss of property, and refusal to help find and recover lost photographs [sic]"; "it is standard and practice of facility to retaliate when the intent is to harm and chill by duress of mental health inmate at a mental health facility such actions are inhumane which has [led] to sleep deprivation, loss of progress with mental health services, and fear of staff [sic]." Id. at 8.

3

For relief, plaintiff seeks damages as well as declaratory and injunctive relief. Id. at 9.

Discussion:

The court first considers plaintiff's claim that defendants' searches of his cell violated the Fourth Amendment which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; see Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, 566 U.S. 318, 326 (2012); Bell v. Wolfish, 441 U.S. 520, 558–59 (1979). "[T]he protections of the Fourth Amendment are triggered when an individual seeking refuge under the Amendment has a legitimate expectation of privacy in the invaded place or the item seized." Wilkins v. Upton, 639 F. App'x 941, 944 (4th Cir. 2016) (per curiam) (unpublished) (cleaned up).

Because plaintiff has no legitimate expectation of privacy in his cell, he fails to state a viable Fourth Amendment claim. See Hudson v. Palmer, 468 U.S. 517, 527–28 (1984) (holding prisoners have no reasonable expectation of privacy in their cells); see also Block v. Rutherford, 468 U.S. 576, 589–91 (1984) (noting "shakedown" cell searches do not violate Fourteenth Amendment due process rights and deferring to prison safety interests); cf. Incumaa v. Stirling, 791 F.3d 517, 531 (4th Cir. 2015) (describing "near-daily cavity and strip searches" as "severe").

The court now turns to plaintiff's property deprivation claims. To state a claim under the Due Process Clause of the Fourteenth Amendment, plaintiff must demonstrate that government action deprived him of life, liberty, or property. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Because the complaint does not allege that defendants deliberately lost or destroyed his property, plaintiff appears to allege mere negligence that is insufficient to state a cognizable constitutional claim. See Davidson v. Cannon, 474 U.S. 344, 347 (1986) ("Where a government

4

official's act causing injury to life, liberty, or property is merely negligent, 'no procedure for compensation is constitutionally required.'" (citation omitted)).

Alternatively, even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson, 468 U.S. at 533; see Mora v. City of Gaithersburg, 519 F.3d 216, 230–31 (4th Cir. 2008). Here, an adequate post-deprivation remedy is available to plaintiff in state court. See Wilkins v. Whitaker, 714 F.2d 4, 6–7 (4th Cir. 1983). Thus, even if defendants deliberately lost or damaged his property, plaintiff still fails to state a claim.

To the extent plaintiff seeks to raise a substantive due process claim, this is defined as "an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement those actions," that "is warranted only where no process could cure the deficiencies in the governmental action . . . . In other words, governmental action offends substantive due process only where the resulting deprivation of life, liberty, or property is so unjust that no amount of fair procedure can rectify it." Front Royal & Warren Cty. Indus. Park Corp. v. Town of Front Royal, Va., 135 F.3d 275, 287–88 (4th Cir. 1998) (internal quotation omitted).

Here, the alleged property deprivations are not so unjust as to be incapable of avoidance by procedural protections and, as noted above, state court post-deprivation remedies are available. Cf. id. Thus, plaintiff has not alleged a viable substantive due process claim. See Pink v. Lester, 52 F.3d 73, 77–78 (4th Cir. 1995); see also Williams v. Crawford, 449 F. App'x 288, 289 (4th Cir. 2011) (unpublished) (per curiam); Calhoun-El v. Maynard, No. RDB-07-220, 2007 WL 5254010, at *n.9 (D. Md. Nov. 19, 2007), aff'd, 267 F. App'x 252 (4th Cir. Feb. 27, 2008).

5

Next, although plaintiff vaguely contends that his initial grievance regarding Smith's search of his cell was "truncated" due to Ward's "false promises," "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." See Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017) (citing Adams, 40 F.3d at 75,), cert. denied, 138 S. Ct. 755 (2018). Thus, this contention likewise fails to state a viable due process claim.

As to retaliation claims, generally, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right," and also must allege specific facts supporting this claim; bare assertions of retaliation do not establish a claim of a constitutional dimension. Adams, 40 F.3d at 74–75. To survive initial review, a First Amendment retaliation claim must plausibly "allege that (1) he engaged in protected First Amendment activity, (2) the defendant[s] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant[s'] conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quotation and alterations omitted), cert. denied, 138 S. Ct. 738 (2018); see Booker, 855 F.3d at 544; Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005).

Defendants' purported acts–cell searches, loss of photographs, destruction of artwork, "false promises" that purportedly "truncated" his grievance procedure, and verbal threats of job loss or prison transfer–do not themselves violate plaintiff's constitutional rights. See O'Bar v. Pinion, 953 F.2d 74, 82–84, 85–86 (4th Cir. 1991) (noting an inmate has no right to a transfer or a non-transfer, and removal from inmate work release program does not violate the Constitution); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (noting changes to "prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative

6

segregation), and the denial of privileges . . . are necessarily functions of prison management that must be left to the broad discretion of prison administrators[.]"); Johnson v. Knable, 862 F.2d 314, 1988 WL 119136 at *1 (4th Cir. 1988) (per curiam) (table) (noting "prison work assignments are matters within the discretion of prison official, and denial of employment does not, in and of itself, abridge any constitutional right of the inmate"); Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978) (per curiam) ("[W]ork assignments of prisoners . . . are matters of prison administration, within the discretion of prison administrators," and do not implicate the due process clause); Cameron v. Bonney, 523 F. App'x 969, 970 (4th Cir. 2013) (per curiam) (unpublished) (noting "mere 'verbal abuse by a prison guard does not give rise to a cause of action under § 1983'" (citation omitted)); Morrison v. Martin, 755 F. Supp. 683, 687 (E.D.N.C.) (collecting cases for the proposition that "[m]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations" (citations and internal quotation marks omitted)), aff'd, 917 F.2d 1302, 1990 WL 174653 (4th Cir. 1990) (per curiam) (unpublished table decision).

Plaintiff's bald, conclusory claim–that defendants' adverse acts were retaliation for filing grievances–amounts to mere "labels and conclusions" insufficient to plausibly allege the requisite causal relationship between the alleged acts and the protected activity. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; Martin, 858 F.3d at 249; Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Adams, 40 F.3d at 74; cf. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (Martin II); Shaw v. Foreman, No. 20-7185, 2023 WL 1486310, at *5–6 (4th Cir. Feb. 3, 2023).

Next, the Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 296–97 (1991) (internal citation omitted). "In order to make out a *prima facie* case that prison conditions violate the Eighth

7

Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The first prong requires that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (quotation and emphasis omitted). The second prong requires a prisoner to show that "the officials acted with a sufficiently culpable state of mind." Id. (quotation and emphasis omitted); see also Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").

Here, plaintiff's bald, conclusory claims do not plausibly allege either 1) that defendants knew of, but disregarded, a substantial risk of serious harm to plaintiff, or 2) that defendants acted with a sufficiently culpable state of mind required for a viable deliberate-indifference claim. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; Hudson v. McMillian, 503 U.S. 1, 8 (1992) (noting the objective prong of an Eighth Amendment claim is "contextual and responsive to contemporary standards of decency" (citation omitted)); Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (noting the subjective prong of a deliberate indifference claim requires proof of "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction."); De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (surviving initial review requires an inmate to plausibly allege both "(1) that the deprivation of a basic human need was objectively sufficiently serious, and (2) that subjectively the officials acted with a sufficiently culpable state of mind." (quotation and alterations omitted)); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (noting a plaintiff "must demonstrate that the officers

8

Case 5:22-ct-03134-M    Document 8    Filed 02/07/23    Page 8 of 10

acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." (quotation omitted)); De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (noting only "extreme deprivations" – *i.e.*, a "serious or significant physical or emotional injury resulting from the challenged conditions" or a substantial risk thereof – satisfy the objective component of Eighth Amendment conditions-of-confinement claims).

To the extent plaintiff instead alleges defendants discriminated against him due of his mental-health conditions, this claim is considered under the Fourteenth Amendment's Equal Protection Clause which provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." See U.S. CONST. amend. XIV, § I. This clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Succinctly stated, plaintiff's bald, vague assertion–that he was discriminated against due to his mental-health conditions–fails to establish that he was treated differently from other similarly situated individuals and is far too threadbare to state a claim under the Equal Protection Clause. Cf. Morrison, 239 F.3d at 654; see Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

To the extent plaintiff alleges that defendants conspired to deprive him of his artwork and photographs, to establish a civil conspiracy in violation of 42 U.S.C. § 1983, plaintiff "must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right."

9

Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). Conclusory conspiracy allegations do not establish the "meeting of the minds" element and thus fail to state a claim. Id.

Because, as noted above, plaintiff fails to show the deprivation of a constitutional right, and because plaintiff's bald, conclusory allegations again constitute mere "labels and conclusions," Twombly, 550 U.S. at 555, plaintiff also fails to plausibly allege a colorable civil conspiracy claim.

Finally, because the complaint cannot be cured by amendment, dismissal is appropriate, see Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 628 (4th Cir. 2015), and the court also declines to exercise supplemental jurisdiction over any lingering state-law claims, see 28 U.S.C. § 1367(c)(3) (granting district courts discretion to decline to exercises supplemental jurisdiction over a pendent state-law claim where the court has dismissed all claims over which it has original jurisdiction); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (noting "pendent jurisdiction is a doctrine of jurisdictional discretion" and that, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001) (holding the district court possesses "inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met").

### Conclusion:

In sum, the court DISMISSES the complaint for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1), and DIRECTS the clerk to close the case.

SO ORDERED, this 7th day of February 2023.

RICHARD E. MYERS II
Chief United States District Judge